## HENRY BRIDGEMAN and Another v. A. O. GIESE.[1]

January 10, 1913.

Nos. 17,847—(105).

**Surrender by tenant — evidence — findings.**

Evidence, in an action for rent of certain storerooms, wherein the defendant claimed to have surrendered the premises as untenantable prior to the termination of the term of the lease, considered, and *held* not so clearly against the findings as to warrant a reversal.

**Counterclaim — finding sustained by evidence.**

The court's finding, in such action, against the defendant's counterclaim for damage to his goods caused by water leakage from other parts of the building, *held* sustained by the evidence.

[1] Reported in 139 N. W. 489.

Appeal by defendant from an order of the district court for St. Louis county, Ensign, Cant and Dibell, JJ., affirming an order of the municipal court of Duluth. The facts are stated in the opinion. Affirmed.

*John A. Keyes,* for appellant.

*Baldwin & Baldwin,* for respondents.

PHILIP E. BROWN, J.

Action brought in the municipal court of Duluth to recover rent of a part of a building leased and used by the defendant as a hardware store. The complaint alleged substantially that the plaintiffs leased to the defendant a storeroom for the period of 2 years and 8 months from September 1, 1907, to and including April 30, 1910, reserving as rent after May 1, 1908, $80 per month, payable in advance, and that defendant took possession under the lease, and so remained in possession until and including April 30, 1910, without paying any rent for the month last named, and demanded judgment for the sum stated.

The defendant answered at great length, admitting his tenancy and failure to pay one month's rent, and alleged that his store was situated on a part of the street floor of a three-story building owned by the plaintiffs, most of which was occupied by their tenants, a portion, however, being under the control of the plaintiffs; that in fact ever since he entered the store and building as lessee the premises demised to him had been untenantable because the water and steam pipes, plumbing and sewer connections, and water and steam fixtures were improperly constructed and out of repair, thus causing water to leak into the stores of the building, and through the ceiling of the part leased to the defendant, and upon his goods, greatly damaging them. In addition to this, the defendant alleged that the plaintiffs permitted others to use the basement of the building, after the execution of the defendant's lease, for the manufacture of dairy products, thus causing disagreeable odors and steam to permeate the defendant's store, rendering it unfit either for habitation or for business, and that the noise and jar of the machinery thus operated below the stores caused a like effect. The defendant further alleged

that he removed his goods from the plaintiff's building in March, 1909, [sic] a month before his term expired, after giving the plaintiffs notice of the termination of the tenancy, pursuant to the provisions of the lease, because of the matters stated, by which the premises were rendered untenantable. The defendant also set out the facts concerning the alleged defective condition of the fixtures and the improper use of the basement, including the following matters by way of counterclaim:

That the building was heated by steam generated in the basement and distributed by iron pipes, and water was supplied by iron pipes, both steam and water being so furnished pursuant to the provisions of the leases with the several tenants of the building; that the plaintiffs, however, retained the exclusive control over the heating plant and the system of water distribution, and undertook to and did make all repairs thereof; that the plumbing in the building was defective and out of repair, thus causing water to enter the defendant's storeroom and damage his goods, of which facts the plaintiffs were notified, but that while repairs were made, temporarily stopping the flow of water, the plaintiffs negligently failed to stop the leaks and to abate the nuisance, though having knowledge thereof.

The counterclaim also contained allegations that the building was improperly constructed, its walls and foundations being insufficient for the uses permitted therein; that the operation of the machinery in the basement, as above stated, also caused goods to fall from the shelves of the store, and the building to settle and leave cracks in the walls near the storeroom floor, which were negligently allowed to remain; all of which resulted to the defendant's damage in the sum of $500, for which sum he demanded judgment. The plaintiffs replied, admitting the leasing of the basement for the manufacture of dairy products and the use of machinery therein; also that the defendant had the right to terminate his lease on May 1, 1908, by notice, but at no other time, and alleged that no notice was given; also admitted that the premises rented to defendant and certain tenements adjoining the same, owned by the plaintiffs, were heated by steam in the usual manner, but denied all other allegations of the answer.

The cause was tried to the court without a jury. Findings were made, among others, to the effect that the defendant remained in possession and control of the leased premises until and including April 30, 1910; the due performance by the plaintiffs of all of the conditions and things to be by them kept and done according to the terms of the lease, the removal of the defendant from the premises being without the plaintiffs' fault or neglect; and also that during the term the premises were always in good tenantable condition, neither the plaintiffs nor any one under their control suffering or permitting any damage to the defendant's goods; and upon such findings the court ordered judgment for the plaintiffs for the sum of $80. Thereafter the defendant moved for amended findings, to the effect that the defendant's removal was caused by the plaintiffs' negligently rendering the premises unfit and unsafe for occupancy for the purposes for which they were rented, and also that the plaintiffs negligently allowed the plumbing and water piping of the building, outside of the part demised to the defendant and under their own exclusive control, to become defective and out of repair during the term, because of which water escaped into the defendant's store and damaged his merchandise in the sum of $500, and that the court change its conclusions of law accordingly. The defendant also moved that, in the event of the denial of such motion, he be granted a new trial on the grounds: (1) That the decision was not sustained by the evidence and was contrary to law; (2) of errors occurring at the trial and excepted to by the defendant, specifying various alleged errors to which exception was taken. These motions being denied, the defendant appealed to the district court, where the same result was reached as in the municipal court, and thereupon the defendant appealed to this court.

The lease of the premises provided that the defendant should hold them "just as they are," and "without any liability or obligation on the part of said lessor of making any alterations, improvements, or repairs of any kind, in, on or about said premises," during the term, and also that, in case the premises became untenantable and unfit for occupancy from any cause, then the liability of the lessee for rent and all his rights of possession would cease at once. The lessors cove-

120 M.—17.

nanted to supply water and heat, and the lessee reserved the privilege of canceling the lease on May 1, 1908, upon written notice of his intention so to do, given on or before April 1 of such year.

1. We will first consider the defendant's claim that the plaintiffs were not entitled to recover the rent for April, 1910, this claim being to the effect that he surrendered the premises in the March previous, because they became untenantable. No question is made in this case but that this tenant had the legal right to relieve himself of liability for rent by surrendering possession when the premises became untenantable, and we will assume that they did become so, as claimed; but in order to avail himself of such right he was required in fact to surrender possession of and control over them during the term. The real question, then, on this phase of the case is: Did the defendant in fact surrender the premises prior to April 1, 1910? In this connection the defendant concedes that the rule of procedure is, as stated in Northland Produce Co. v. Stephens, 116 Minn. 23, 28, 133 N. W. 93, and Oertel v. Pierce, 116 Minn. 266, 133 N. W. 797, that our duty is only to inquire whether the evidence supports the finding of the trial court, and that in order to justify a reversal the evidence must be clearly against the findings, but contends that there was in this case no evidence at all to sustain the one in question. We will, however, consider the defendant's contention under the rule above stated, notwithstanding that he submitted his case upon the theory of a total lack of evidence.

Evidence was received tending to show that the demised premises became untenantable prior to and during March, 1910, because of water leaking through the ceiling of the storerooms occupied by the defendant, from the upper part of the building, without fault on his part, thus injuring his merchandise and causing him to remove from and surrender the premises during that month. There was also evidence of other causes not attributable to the defendant from which the same conclusion might have been reached. On the other hand, we find testimony in the record, given by an apparently disinterested witness, to the effect that, while the defendant removed his stock from the storerooms in March, 1910, he refused to give up possession or to surrender the keys thereof until the expiration of the lease. We

cannot, therefore, disturb the court's third finding, to the effect that the defendant remained in possession and control of the store until the termination of the term.

2. We pass, now, to the consideration of the counterclaim. The defendant predicates his right to recover thereon upon the proposition that where a landlord retains, as was the case here, a portion of the building under his control, he must keep such part in repair, and that if he fail to do so he will be liable to the tenant in tort for any resulting damages arising by reason of such negligence, and this irrespective of and entirely apart from the conditions of the lease, and, furthermore, that the plaintiffs, having undertaken to make certain repairs of the plumbing where there was leakage, as appeared from the evidence, their failure to properly repair established their negligence in the premises. Upon this theory the defendant introduced evidence tending to prove the allegations of the counterclaim, and also that he suffered damage in a sum exceeding $500, from water leakage as above stated, without fault on his part; but no testimony was offered that he suffered any pecuniary loss, except from water. He makes the same claim with regard to the insufficiency of the evidence as stated in subdivision 1 of this opinion.

The plaintiffs do not contend that the rule as to a landlord's liability, above stated, is not the correct one, but insist that there is evidence in the record establishing, or at least tending to show, that the plaintiffs were not negligent. The rule stated is predicated wholly upon the doctrine of negligence, and it does not follow, merely from the fact that water leaked through the ceiling of the storeroom, situated as it was in a large building occupied by other tenants, that the plaintiffs were negligent, for such water might have come from sources for which the plaintiffs were not responsible. The defendant's theory is that the water which did the damage came from certain valves in the water pipes in a closet over his store, which was under the control of the plaintiffs. The plaintiffs offered evidence tending to show that shortly after the leakage commenced their attention was called to the matter, and that the valves above mentioned were properly repaired; that the building was a new one, with a suitable plumbing system installed therein; that no such

amount of leakage occurred as the defendant claimed; and, as rendering the defendant's claims improbable, that he failed to exercise his option to cancel the lease under the provision above recited, and, furthermore, that in March, 1909, when the defendant claims that the leakage was going on, he refused to dispose of his interest in his lease.

We have read the record with care, and deem it neither necessary nor profitable to discuss the evidence further, for we are satisfied that it was sufficient to sustain the court's finding. We will, however, advert to the fact, shown by the evidence, that some of the water which damaged the defendant's goods came from a clogged water-closet situated in a room occupied by one of the plaintiffs' other tenants, and for whose negligence, if any, the plaintiffs could not be held responsible under any testimony in the record, except on the theory that they were insurers against such damage, which theory is untenable; and there can be little doubt that the court below was right, on this ground alone, in denying a recovery on the counterclaim, for there was no evidence to indicate what portion of the defendant's damage came from this cause.

3. We have also considered the assignments of error concerning the admission of evidence over the defendant's objections, and likewise the court's failure to amend its findings and to make certain others. The appeal to the district court in this case was tried before Judges Ensign, Cant, and Dibell, who said: "The evidence amply justifies the finding of the trial court. There were some errors in the course of the trial, but not of so substantial a character as to call for a new trial. The case was fairly presented on both sides, and it seems that the right conclusion was reached." These words express our conclusion on the questions immediately before us, as well as all others involved herein.

Order affirmed.

Heard before HALLAM, J., took his seat.